IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| NOEL GEORGE FLYNN<br>    a/k/a Johnny Lami Taylor<br>    a/k/a Robert David Gibson<br>    a/k/a Michael Alston<br>    a/k/a Preston Flynn<br>    a/k/a Morl Flynn<br><br>                    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | **MEMORANDUM DECISION<br>AND ORDER**<br><br><br>Case No. 2:10-cv-973<br>*Related to Case No.*: 2:08-cr-772<br><br>Judge Clark Waddoups |

On October 1, 2010, federal inmate Noel George Flynn ("Flynn") filed a *pro se* motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255. After a careful review of the record, including the government's response to Petitioner's claims, the court concludes that there are no disputed issues of material fact and an evidentiary hearing will not be of aid to the court. The court also determines, for the reasons set forth below, that Flynn has failed to adequately demonstrate entitlement to relief on any claims asserted. Accordingly, his motion is denied.

1

## BACKGROUND

On October 29, 2008, Flynn was indicted on two counts: Possession with Intent to Redistribute under 21 U.S.C. § 841(a)(1) and Reentry of a Previously Deported Alien under 8 U.S.C. § 1326. Flynn initially entered a plea of "not guilty," but changed his plea to guilty on June 1, 2009, after entering into an agreement with the prosecution. This agreement detailed that, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the court would impose a sentence of 108 months imprisonment. Statement in Advance of Plea ("Plea Agreement"), at 6, (Dkt. No. 25 in Case No. 2:08-cr-722 (D. Utah June 1, 2009)). The agreed-upon sentence was considerably higher than that under the United States Sentencing Guidelines, which advised a sentence range of between 70 and 85 months, but, as will be explained, it was also substantially shorter than the minimum sentence potentially mandated by federal law.

The government accused Flynn of possession of 2.8 kilograms of cocaine. Plea Agreement, at 3 4. By statute, this offense carries a minimum mandatory sentence of 5 years, which is increased to 10 years if the defendant has previously been convicted of a felony drug offense. 21 U.S.C. § 841(b)(1)(B). Flynn did have a previous drug felony.

Federal law provides that the minimum mandatory sentence may be disregarded if the defendant qualifies for the "safety valve" provided in United States Sentencing Guidelines § 5C1.2. In order to qualify under this provision, however, the defendant must meet several conditions, including "truthfully provid[ing] to the Government all information and evidence the defendant has concerning the offense." 18 U.S.C. § 3553(f)(5). In Flynn's case, the prosecution specifically objected to the application of the safety valve credit, stating that Flynn repeatedly made "incredible" statements to investigators and that "both parties shared the conclusion that

defendant simply failed to truthfully provide all information necessary for safety valve eligibility." Position of United States with Respect to Sentencing Factors, at 2 3 (Dkt. No. 32 in Case No. 2:08-cr-722 (D. Utah Sept. 14, 2009)). In sum, because of the amount of cocaine involved, his prior conviction, and the inapplicability of the safety valve, Flynn was potentially facing a minimum mandatory sentence of 10 years.

However, in exchange for his guilty plea on both counts and acceptance of a sentence of 108 months, the government agreed not to file a notice pursuant to 21 U.S.C. § 851, which would have exposed Flynn to a minimum mandatory term of imprisonment of ten years.[1] Plea Agreement, at 6. Flynn entered into this guilty plea on June 1, 2009 and, under its terms, was sentenced to 108 months in federal custody on October 7, 2009. Because the government had not officially brought in Flynn's prior conviction only the five year statutory minimum mandatory applied, and the advisory guideline sentence range was 70 87 months for this crime.

Because of this discrepancy, Flynn now challenges his sentence. He makes three separate allegations: (1) his plea was unknowing and involuntary because he did not understand its terms; (2) he received ineffective assistance of counsel because of the length of his sentence and a misrepresentation about his ability to participate in the Residential Drug Abuse Program ("RDAP"); and (3) consideration of his prior conviction violated his right to due process. Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") (Dkt. No. 1). Although Flynn's plea agreement contained a waiver

---

[1] The court notes that if it were to grant Flynn's petition and vacate the sentence, the government could introduce this evidence and the defendant would face a statutory mandatory minimum sentence of 120 months, twelve months longer than the 108 month sentence he is currently serving.

3

of his right to contest his sentence through a § 2255 motion, his contentions arguably relate to the validity of the plea itself. Therefore, the court will evaluate the merit of each of his claims.

## ANALYSIS

### I. STANDARD OF REVIEW

Because Flynn is proceeding pro se, the court must liberally construe his pleadings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Nevertheless, as petitioner, Flynn retains the burden of "alleging sufficient facts on which a recognized legal claim could be based." *Id.* The court need not accept as true a pro se plaintiff's "conclusory allegations." *Id.*

### II. UNKNOWING AND INVOLUNTARY PLEA

Flynn states that he was not given a copy of his plea agreement prior to the plea hearing and had less than five minutes to review the agreement with counsel, who instructed him to tell the court that he understood the plea agreement. In his § 2255 motion, Flynn contends that he did not, in fact, understand the terms of the agreement. Flynn alleges that, because he reads at a fourth grade level and has difficulty following complex legal arguments, he could not have comprehended the plea agreement in the very short time he was given to review it with counsel. Because it must liberally construe a pro se petitioner's pleadings, the court also notes that the oral colloquy at Flynn's change of plea hearing did not comport with the requirements of Federal Rule of Criminal Procedure 11(b)(1).

"Given the seriousness of the matter, the constitution insists, among other things, that the defendant enter a guilty plea that is voluntary and that the defendant must make related waivers knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (internal quotations, citations,

and alterations omitted). A determination that a plea is voluntary is a legal conclusion, but one that rests on "factual findings and inferences from those findings." *Fields v. Gibson*, 277 F.3d 1203, 1212 (10th Cir. 2002). "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1986) (internal quotations, citations, and alterations omitted).

**A.     Involuntary**

Although allegations of coercion typically relate to actions by the court or prosecutor, it is also possible that "coercion by the accused's counsel can render a plea involuntary." *Fields*, 277 F.3d at 1213. *See also Hill*, 474 U.S. at 56. In order to constitute coercion, however, counsel must "materially misinform[] the defendant of the consequences of the plea" or inform "the defendant that he has no choice, he must plead guilty." *Fields*, 277 F.3d at 1213.

Flynn has stated that his counsel told him to tell the court that he understood the plea, but petitioner has not alleged he was told that he *must* do so. If, in the process of explaining the upcoming change of plea hearing, Flynn's lawyer told him that the court would ask him if he understood the plea agreement and that he should indicate he did, this is not sufficient to render the plea agreement involuntary. Furthermore, at his change of plea hearing, Flynn was asked if "anyone threatened or coerced [him] into pleading guilty," and he responded "No, sir." Transcript of Change of Plea Hearing, at 4 (Dkt. No. 39 in Case No. 2:08-cr-722 (D. Utah June 1, 2009)).

A plea may also be involuntary when the defendant is materially misinformed of the consequences of the plea by his attorney. The only allegation Flynn has made concerning

5

misrepresentations by his lawyer involves the RDAP program. As explained below, this misstatement, if it occurred, was relatively inconsequential and did not constitute ineffective assistance of counsel. For the same reason, the court finds it cannot serve as the basis for a coercion claim. "Where, as here, the defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *United States v. Weeks*, 653 F.3d 1188, 1201 (10th Cir. 2011) (quoting *Hill*, 474 U.S. at 56).

**B.     Unknowing**

A defendant need not understand every detail of the guilty plea to voluntarily accept it. *See Fields*, 277 F.3d at 1215 n. 7 ("Absent a finding of incompetence, evidence regarding [a defendant's] below-average intelligence does not establish that the guilty plea was involuntary."). *See also Dusky v. United States*, 362 U.S. 402, 402 (1960) ("[T]he test must be whether [Defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding   and whether he has a rational as well as factual understanding of the proceedings against him."). Flynn argues that he did not understand the terms of his plea and the sentence that would be imposed upon him. In light of the record, the court cannot accept this characterization.

Flynn signed the plea agreement, indicating that he understood its terms and agreed to them. Plea Agreement, at 7. At his change of plea hearing, although Flynn did not affirmatively testify that he understood the plea agreement, he told the court that he had read it in its entirety

6

and had adequate time to discuss it with his lawyer.[2] Transcript of Change of Plea Hearing, at 4. Four months later, at his sentencing, Flynn maintained that he understood his sentence and the interplay between his plea, the United States Sentencing Guidelines, and the minimum mandatory penalty. At that hearing, the court stated:

> I wanted to make sure that the defendant understands that if the Court were not to accept the 108 months [sentence] the government then could set aside the plea agreement and you would be subject to whatever charges the government decided at that point they could bring which may put you back in the 120 month range. I just want to make sure that you understand that, and make sure that your counsel has explained that risk to you. And then if I am satisfied that you fully understand the agreement that you have made and that it is your desire to still hold by that agreement, I will sentence you to the 108 months.

Transcript of Sentencing Hearing, at 10 (Dkt. No. 40 in Case No. 2:08-cr-722 (D. Utah Oct. 7, 2009)). The defendant replied "Yes, Your Honor." *Id.* A few minutes later, the follow exchange occurred:

> The Court: . . . Mr. Flynn, I again I want to — I'm going to review with you these facts and make sure that you voluntarily and clearly understood what we're doing here today. You understand that you have signed the plea agreement and that the plea agreement which has been signed by you and your counsel agrees to a sentence of 108 months. Do you understand that?
> The Defendant: Yes, Your Honor.
> The Court: And do you understand that there are some scenarios that could play out in which you could have a sentence less than that, but you would also risk having a sentence that was mandatory that was greater than 108 months. Do you understand that?
> The Defendant: Yes, Your Honor.
> The Court: And it is your desire to proceed with the plea agreement and be bound

---

[2] To cite the relevant part of the exchange:
The Court: Okay. Is that, in fact, your signature at the end of that document [the plea agreement]? The Defendant: Yes, Your Honor. The Court: And did you place your signature there after you first read each and every paragraph and sentence of that document? The Defendant: Yes, Your Honor. The Court: Okay. Have you had adequate time to talk with your attorney about your plea? The Defendant: Yes. The Court: And about this — this document, too? The Defendant: Yes, sir." Transcript of Change of Plea Hearing, at 4.

>   to the agreed to sentence of 108 months?
>   The Defendant: Yes, Your Honor.
>   The Court: Okay. Do you have any questions about that or do you wish to have any discussions with your counsel before the Court proceeds to impose sentence?
>   The Defendant: No, Your Honor.

*Id.* at 12 13. On the basis of this record, the court concludes that Flynn sufficiently understood the bargain being struck and that there are no grounds to void his plea agreement for being unknowing or unintelligent.

**C.    Rule 11**

While the colloquy at Flynn's change of plea hearing did not follow the outline laid out in Rule 11, the court determines this was harmless error. The Supreme Court has severely curtailed the ability of petitioners to obtain relief for a Rule 11 violation on a § 2255 motion, limiting such relief to those circumstances when there is a constitutional error or "complete miscarriage of justice." *United States v. Timmreck*, 441 U.S. 780, 783 (1979), *see also United States v. Dominquez Benitez*, 542 U.S. 74, 83 n. 9 (2004) ("For Rule 11 claims, [a § 2255 claim] is open only in the most egregious of cases. A defendant will rarely, if ever, be able to obtain relief for Rule 11 violations under § 2255.").

The Rule 11 colloquy serves some constitutional functions, such as to explain to the defendant that he is waiving his rights against self-incrimination and the right to a jury trial. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). *See also Dominguez Benitez*, 542 U.S. at 84 n.10 ("[W]hen a record of a criminal conviction obtained by a guilty plea contains no evidence that a defendant knew of the rights he was putatively waiving, the conviction must be reversed."). Flynn does not have a claim for such deficiencies, however, because although he was not orally informed he was waiving his constitutional rights, this information was contained within the

written plea agreement, which he signed. Plea Agreement , at 7. *Cf. Boykin*, 395 U.S. at 244 (holding there was reversible error in the court's acceptance of a guilty plea when there was no evidence on the record that defendant knew he was waiving important constitutional rights).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his motion, Flynn contends his counsel fell short in two respects. First, he believes the length of his sentence, in contrast to the range suggested by the United States Sentencing Guidelines, is evidence of ineffective assistance. Second, Flynn states that his lawyer assured him that his sentence could be shortened through participation in RDAP. Flynn, however, is a citizen of Jamaica who was in the United States illegally, and as a removable alien is not eligible for the RDAP program. *See* 28 C.F.R. § 550 (1996). Neither of Flynn's claims meet the high standard for ineffective assistance of counsel established by the Supreme Court.

In *Strickland v. Washington*, the Supreme Court held that defendants alleging ineffective assistance of counsel must satisfy a two-part test. 466 U.S. 668, 694 (1984). They must show that attorney error was so serious they were effectively denied their Sixth Amendment right to counsel, and also establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* The petitioner bears the burden of overcoming the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

In his motion, Flynn states "[c]ounsel was ineffective in negotiating the plea agreement in that the agreement was not beneficial to petitioner" and "counsel misled and falsely induced petitioner to plea [sic] guilty to 108 months. No charges were dismissed." § 2255 Motion, at 6. Though Flynn may wish that his attorney had been able to negotiate more favorable terms for the

plea agreement, the bargain struck still operated in his favor. He ultimately agreed to a sentence of nine years. On the drug possession count alone, Flynn was potentially facing a minimum mandatory sentence of ten years. He avoided the ten year sentence by accepting the nine year sentence, foregoing a trial, and receiving the government's promise that it would not introduce his prior drug felony conviction. This opportunity was available to Flynn because of the effective assistance proffered by his counsel. On this point, Flynn has not satisfied the *Strickland* test and overcome the "strong presumption" that counsel rendered him "reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Flynn also discusses a conversation he had with his attorney, where he was told that he could take part in the RDAP program. Those who participate in the program, which Flynn was not eligible for because of his alien status, may receive shortened sentences in exchange for accepting drug abuse treatment. *See* 18 U.S.C. § 3621(e)(2)(B) (explaining the sentence of a prisoner may be reduced by up to one year after the completion of RDAP, at the discretion of the Bureau of Prisons). Even if Flynn's attorney incorrectly told him that he could participate in RDAP, however, this does not constitute ineffective assistance of counsel. "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999). There are many regulations governing RDAP, all promulgated by the Bureau of Prisons, and many prisoners do not qualify to participate in the program. If Flynn's attorney told him he could participate in RDAP, he was technically incorrect, but not constitutionally ineffective.

Furthermore, under *Strickland*, even if counsel's representation about RDAP were completely unreasonable, Flynn cannot prevail on his ineffective assistance of counsel claim

unless he can also show that he was prejudiced by the statement. "When assessing 'prejudice,' a court may consider the likelihood that the correction of an alleged error 'would have led counsel to change his recommendation as to the plea.'" *Fields*, 277 F.3d at 1215 (quoting *Hill* 474 U.S. at 59) (internal alterations omitted). There is no evidence in the record that RDAP was the driving force behind Flynn's counsel's recommendation that Flynn accept the plea agreement. Instead, the recommendation was based on Flynn avoiding a ten-year minimum mandatory sentence. Flynn has therefore failed to show that had the RDAP information been corrected, his counsel's recommendation about the plea would have changed. Moreover, the court is not convinced that Flynn's decision to enter into the guilty plea was dependent upon his eligibility for the RDAP program. Accordingly, the court concludes that Flynn has failed to show prejudice or ineffective assistance of counsel.

## IV. INTRODUCTION OF FLYNN'S PRIOR OFFENSE

In addition to his claims that the plea agreement was involuntary and his counsel's assistance was ineffective, Flynn also raises an argument that his constitutional due process rights were violated because of the length of his sentence. As he states, "[i]mposition of the sentence of 108 months on petitioner was done in violation of petitioner's due process rights because the government did not file the required information with the court, making the court aware of petitioner's prior conviction which could be used to enhance petitioner's Petitioner [sic] nor the court was not given a chance to question the validity of such case and conviction." § 2255 Motion, at 9.

The court understands Flynn's argument to be that, before being subject to a sentence higher than that suggested by the United States Sentencing Guidelines, he should have had the

opportunity to contest his prior conviction acting as a sentencing enhancement. But Flynn's sentence was not actually enhanced by the prior conviction. Had it been, he would have faced a sentence longer than 108 months. If Flynn had wished to contest the validity of his previous conviction, he would have had to reject the plea agreement and allow the government to introduce it under 21 U.S.C. § 851, putting himself at risk for a ten year statutory mandatory minimum sentence. The court identifies no violation of Flynn's constitutional rights.

## **CONCLUSION**

For the reasons set forth above, Flynn's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is DENIED. The court denies all relief that Flynn seeks, and this case is now closed.

DATED this 16th day of December, 2011.

BY THE COURT:

*[signature]*
Clark Waddoups
United States District Judge